UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\----------------------------------------------x
BERKSHIRE LIFE INSURANCE
COMPANY OF AMERICA,

                        Plaintiff,

      -against-

ROBERT A. HAGERMAN,

                        Defendant.
\----------------------------------------------x

MEMORANDUM AND ORDER
09-CV-2037 (ILG)

GLASSER, United States Senior District Judge:

Berkshire Life Insurance Company of America ("Berkshire") brings this action against Robert A. Hagerman ("Hagerman") seeking rescission of a disability insurance policy based on Hagerman's failure to apprise Berkshire of material health-related information on his applications for the policy and an associated rider. Hagerman seeks to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons that follow, Hagerman's motion is denied.

## BACKGROUND

### I. Procedural History

On May 13, 2009, Berkshire filed a complaint against Hagerman seeking to rescind a Disability Insurance Policy ("the Policy"), and a related Catastrophic Disability Benefit Rider ("the Rider"), it had issued to Hagerman in 2008. (Dkt. # 1) ("Complaint"). Berkshire alleged that Hagerman had failed to apprise it of pre-existing medical conditions by making material misstatements of fact on his applications for the Policy and the Rider. Id. ¶¶ 8-26.

As a basis for federal court jurisdiction, Berkshire alleged that it was a citizen of Massachusetts by virtue of its being "an insurance company of," and maintaining its principal place of business in, Massachusetts. Id. ¶ 1. Berkshire alleged that Hagerman was a New York citizen and that the amount in controversy exceeded $75,000, see id. ¶¶ 2,4, and on the basis of these allegations invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332.

On June 8, 2009, Berkshire submitted to the Court a stipulation of dismissal without prejudice which the Court granted on June 10. (Dkt. # 3). That same day, the Court received a letter from Berkshire seeking to reinstate the complaint. (Dkt. # 4) Berkshire explained that it had voluntarily dismissed the case based on a release and settlement agreement executed by Hagerman which he had subsequently disavowed. In a follow-up letter, Berkshire further explained the circumstances underlying its request and attached a letter from Hagerman's attorney repudiating the release and settlement and announcing that Hagerman intended to institute a separate action against Berkshire and others based upon Berkshire's denial of claims made by Hagerman under the Policy. (Dkt. # 6). The Court granted Berkshire's application to reopen the case. (Dkt. # 8).

On July 13, 2009, Hagerman filed this motion to dismiss Berkshire's complaint, asserting that the Court lacks subject matter jurisdiction over this action and that, even if it has jurisdiction, it should decline to exercise it in deference to an action brought by Hagerman against Berkshire and others filed in a New York state court on June 22, 2009. (Dkt. # 11) ("Mot. to Dismiss"). In that action Hagerman asserts causes of action against Berkshire, its corporate parent, and their employees relating to the denial of Hagerman's claims under the Policy and Rider. See Dkt. No. 1 (Notice of Removal) in

Hagerman v. Berkshire Life Insurance Company of America et al., No. 09 Civ. 3184 (E.D.N.Y. filed July 23, 2009). Berkshire timely removed that action to this Court but, following oral argument before the Court, the parties voluntarily dismissed that action, mooting Hagerman's arguments based on abstention. See dkt. #20 in No. 09 Civ. 3184.

Hagerman's motion to dismiss asserts that Berkshire is a citizen of New York and, accordingly, there is no diversity of citizenship between the parties. He grounds this assertion on two arguments. First, he argues that Berkshire has no corporate identity independent of (i.e., is the "alter ego" of) its parent corporation, the Guardian Life Insurance Company of America ("Guardian"). It is undisputed that Guardian is a New York citizen. Second, he asserts that, even if Berkshire is a distinct entity, its "nerve center" and, accordingly, its principal place of business, is in New York state.

Included with the motion are several documents which, Hagerman argues, demonstrate that Berkshire is an alter ego of Guardian: A 2001 news article discussing Berkshire's then-pending merger with Guardian. Mot. to Dismiss Exh. A.; An excerpt from a website called "disabilityquotes.com" discussing a pending appointment of a new President of Berkshire. Id. Exh. B; A printout of a page from Berkshire's website stating that "Berkshire distributes its products through a nationwide network of Guardian agencies." Id. Exh. C.; Lastly, there is a copy of the Policy issued to him by Berkshire with the Guardian logo displayed on the cover page. Id. Exh. D.

Following Hagerman's submission of his motion to dismiss, Berkshire amended its complaint to assert two additional claims seeking specific enforcement of the release and settlement agreement (Count 4) and specific enforcement of an accord and satisfaction allegedly executed by Hagerman as part of the settlement agreement (Count

5). (Dkt. # 15). Berkshire thereafter informed the Court that the parties had agreed that Hagerman's motion to dismiss was responsive to the amended complaint notwithstanding the additional claims.

## DISCUSSION

### I. Motion to Dismiss

#### A. Applicable Legal Standards

Rule 12 (b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1) even "a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." Frisone v. Pepsico Inc., 369 F.Supp.2d 464, 469 (S.D.N.Y.2005). Where subject matter jurisdiction is premised upon diversity of citizenship and the amount in controversy exceeds $75,000, see 28 U.S.C. § 1332(a), the party seeking to invoke diversity jurisdiction has the burden of proving by a preponderance of the evidence that complete diversity existed at the time the action was commenced. See O'Donnell v. Club Mediterranee S.A., No. 05 Civ. 610, 2008 WL 794975, at *5 (E.D.N.Y. Mar. 24, 2008) (citing Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir.1998)). For diversity purposes, a corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1).

As an initial matter, the Court rejects Berkshire's assertion that Hagerman's motion improperly relies on documents neither attached to nor referenced in the amended complaint. As Hagerman points out, this is a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). In this context, the Court "may

resolve disputed jurisdictional factual issues by reference to evidence outside the pleadings." Deajess Medical Imaging PD v. Allstate Ins. Co., No. 03 Civ. 3920, 2004 WL 1632596, at *2 (S.D.N.Y. Jul. 22, 2004) (citing Flores v. Southern Peru Copper Corp., 343 F.3d 140, 161 n. 30 (2d Cir.2003); Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir.2002)).

### B. Berkshire's Corporate Citizenship

Berkshire has alleged that it is a citizen of Massachusetts by virtue of being incorporated in Massachusetts and having its principal place of business there. See Complaint ¶ 1; Memorandum in Opposition ("Opp.") at 6. Hagerman does not dispute that Berkshire is organized under the laws of Massachusetts. Rather, he asserts that Berkshire is a New York citizen in two respects. He argues that the Court should ignore the separate corporate identities of, or "pierce the veil" between, Berkshire and Guardian because they are "alter egos." As such, argues Hagerman, Berkshire shares Guardian's New York citizenship. Hagerman argues in the alternative that Berkshire's principal place of business is in New York because that is where its "nerve center" lies. The Court considers each of these arguments in turn.

### 1. Piercing the Corporate Veil

The "piercing the corporate veil" doctrine was first announced by the New York courts in Lowendahl v. Baltimore & Ohio R.R. Co., 287 N.Y.S. 62, aff'd. 272 N.Y. 260 (1936). See LoCurto ex rel. Estate of LoCurto v. Jevic Transp., Inc., No. 99 Civ. 2314, 2004 WL 469820 (E.D.N.Y. Jan. 14, 2004) (Glasser, J.); see also Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 138 (2d Cir. 1991). According to the Second Circuit, Lowendahl

> explain[ed] that to pierce the corporate veil, the parent corporation must at the time of the transaction complained of: (1) have exercised such control that the subsidiary "has become a mere instrumentality" of the parent, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud results in an unjust loss or injury to plaintiff. . . .
>
> Factors which the triers of fact may consider that would tend to show that the defendant . . . was a dominated corporation include such things as: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

Passalacqua Builders, Inc., 933 F.2d at 138-39. In Gartner v. Snyder, 607 F.2d 582 (2d Cir. 1979), the Court of Appeals further observed that

> New York courts disregard corporate form reluctantly, they do so only when the form has been used to achieve fraud, or when the corporation has been so dominated by . . . another corporation . . . and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.

Id. at 586 (2d Cir. 1979) (citing Port Chester Elec. v. Atlas, 40 N.Y.2d 652, 656 (1976), and Walkovszky v. Carlton, 18 N.Y.2d 414 (1966)); see also Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980) and Itel Containers Int'l Corp. v. Atlanttrafik Express Serv.

Ltd., 909 F.2d 698, 703 (2d Cir.1990). There is not a jot or a tittle of evidence proffered by Hagerman suggesting that Berkshire's existence is for the purpose of devising a scheme to defraud or can be regarded as Guardian's alter ego.

The evidence Hagerman does proffer in support of piercing the veil speaks to some, but not all, of the factors identified in Passalacqua. He has provided no evidence that Berkshire fails to observe any corporate formalities or is inadequately capitalized. Nor does he provide evidence that funds are, or ever have been, put in and taken out of Guardian for personal rather than corporate purposes. With respect to overlap between the two corporations, the 2001 article relating to the merger between Berkshire and Guardian indicates that, following the merger, two Berkshire board members would join Guardian's board of directors. See Mot. to Dismiss, Exh. A at 1. But corporations do not become alter egos solely by sharing board members. "Parents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations." Fletcher v. Atex, Inc., 68 F.3d 1451, 1460 (2d Cir.1995); see also In re Amaranth Natural Gas Commodities Litigation, 587 F.Supp.2d 513, 538 (S.D.N.Y. 2008) (finding that allegations of "common ownership and overlapping directors" were, by themselves, insufficient to pierce the corporate veil). Hagerman also claims that the 2001 article states that "[a]ll of Berkshire's employees would become employees of" Guardian following the merger. Yet a reading of that article reveals this statement to be a mischaracterization. The article distinguishes between "agents," who "were given the option of representing Guardian or being terminated," and "employees," whose status after the merger is not specified in the article. Thus the article does not contradict the affidavit of Berkshire's chief financial officer asserting that Berkshire "maintains

7

separate employees, corporate officers, and Board of Directors." Affidavit of John P. Cifu ("Cifu Aff.") ¶ 7, Exh. B, C.[1]

Hagerman has provided no evidence of common office space, address and telephone numbers and, indeed, Hagerman does not dispute that Berkshire maintains an office in Massachusetts. Nor does he provide specific evidence that Guardian has routinely paid or guaranteed Berkshire's debts or used Berkshire's property as if it were its own. Rather, the remaining evidence presented by Hagerman attempts to demonstrate that Berkshire may use Guardian's agencies to distribute its insurance products. That does not establish control of Berkshire by Guardian such that the former is "a mere instrumentality" of the latter. Passalacqua, 933 F.2d at 138-39. Similarly, the use of the Guardian logo on Berkshire insurance documents is insufficient to demonstrate such control by Guardian. Cf. Xerox Corp. v. Litton Industries, Inc., 353 F.Supp. 412, 418 (S.D.N.Y. 1973) (finding that the mere presence of the parent corporation's name and logo at subsidiary's retail stores and on subsidiary's employees' business cards was "a rather weak rod upon which to support the alter ego theory"). This is especially so where the documents on which Hagerman relies clearly indicate that they are products of Berkshire's insurance business. Hagerman's disability income policy, while displaying the Guardian logo in the bottom right-hand corner, also displays Berkshire's name and Massachusetts address prominently at the top. More importantly,

---

[1] Berkshire submitted the Cifu affidavit in connection with its motion to dismiss the 3184 action. Hagerman correctly points out that, other than a reference in Berkshire's memorandum of law, see Opp. at 10 n. 2, Berkshire has not submitted the affidavit separately in connection with the present motion. However, because this action and the 3184 action are highly interrelated and both before the Court, it considers the Cifu affidavit in connection with Hagerman's motion to dismiss.

the document explicitly states that "[t]he policy is issued by [Berkshire], a wholly owned stock subsidiary of [Guardian]." These documents can hardly be said to convey the appearance of control, much less the actual control needed to pierce the corporate veil. Under these circumstances, the Court concludes that there is no basis for piercing the veil between Guardian and Berkshire.

### 2. Principal Place of Business

In this Circuit, the principal place of business of a corporation is determined by one of two tests: "either the 'nerve center test' for corporations with operations spread over numerous states or the 'place of the activities/public impact test' for corporations with more localized operations." Royal Indem. Co. v. Wyckoff Heights Hosp., 953 F.Supp. 460 (E.D.N.Y.1996) (quoting R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 654-55 (2d Cir.1979)). The nerve center test looks to "those factors that identify the place where overall corporate policy originates" or the "nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objectives." Royal Indem., 953 F.Supp. at 462 (quoting R.G. Barry, 612 F.2d at 655). That is, "the 'nerve center' test places the principal place of business at the location of the corporation's headquarters." Peters v. Timespan Communications, Inc., No. 97 Civ. 8750, 1999 WL 135231, at *5 (S.D.N.Y. Mar. 12, 1999).

Hagerman argues that Berkshire's principal place of business is in New York because "Berkshire's policy derives from its New York based parent company Guardian." Mot. to Dismiss 4. In support of this argument Hagerman relies on the same evidence used as the basis for his veil-piercing theory. None of this evidence supports the view

9

that Berkshire's corporate policy originates at Guardian's headquarters in New York. The affidavit of Berkshire's CFO states that Berkshire maintains its principal place of business in Massachusetts, from which it issues insurance policies in New York and elsewhere pursuant to licenses issued to it, administers claims under its policies, files separate annual statements and underwrites its own insurance policies. Cifu Aff. ¶¶ 9-11. Hagerman has not brought to the Court's attention any evidence even suggesting that Berkshire's policy regarding these matters originates with Guardian. The Court finds that Berkshire's principal place of business is Massachusetts. Accordingly, there is complete diversity of citizenship in this case and the Court properly assumes subject matter jurisdiction over this action.

## CONCLUSION

For the foregoing reasons, the Court DENIES Hagerman's motion to dismiss for lack of subject matter jurisdiction. Hagerman's motion to dismiss in deference to the 3184 action is also DENIED as moot.

SO ORDERED.

Dated: Brooklyn, New York
July 13, 2010

/s/
I. Leo Glasser
United States Senior District Judge

**Copies of the foregoing memorandum and order were electronically sent to:**

<u>Counsel for the Plaintiff</u>
Steven Paul Del Mauro
McElroy, Deutsch, Mulvaney & Carpenter, LLP
100 Mulberry Street
Newark, NJ 07102


<u>Counsel for the Defendant</u>
Derrick Hanna
Hanna & Vlahakis
7504 Fifth Avenue
Brooklyn, NY 11209